IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAFFENEY AUSTIN, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 2:12-CV-02564-RDP |
| | } |
| COMPASS GROUP d/b/a EUREST | } |
| DINING SERVICES, | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 29) filed October 31, 2013. On November 20, 2013, this court gave Plaintiff, who is proceeding *pro se*, "express, ten-day notice of the summary judgment rules, of [her] right to file affidavits or other materials in opposition to the motion, and of the consequences of default." *McBride v. Sharpe*, 981 F.2d 1234, 1236 (11th Cir. 1993) (quotation and citation omitted). (Doc. # 33). In fact the court allowed Plaintiff an additional twenty-one days to respond to the Motion.[1] However, Plaintiff has not responded to Defendant's Motion.

**I.     Facts**

Eurest Dining Services ("Eurest") is a division of Defendant Compass Group. (Doc. # 30-1 ¶ 2). Eurest provides on-site food and catering services on a contract basis to businesses, including Regions Bank. (Doc. # 30-1 ¶¶ 3-4). Plaintiff, who is African-American, is a former employee of Defendant. (Doc. # 30-3 at 49:4-7, 155:23).

---

[1] Defendant mailed copies of its Motion and supporting materials to Plaintiff on October 31, 2013. (Doc. # 29 at 4; Doc. # 30 at 34, Doc. # 31 at 3).

Under Defendant's Work Rules policy, "very serious offenses," such as dishonesty and unauthorized use of Company cash or merchandise, will normally result in dismissal. (Doc. # 30-6 p. 3; Doc. # 30-7 p. 3; Doc. # 30-3 at 61:12-15, 62:2-13, 62:19-22, 63:2-15, 66:10-15). Defendant's Integrity in the Workplace policy provides that "[i]ntegrity and honesty in the workplace is fundamental" and that theft of Company property will likely result in immediate termination. (Doc. # 30-6 pp. 5-6; Doc. # 30-7 p. 5). Plaintiff was familiar with Defendant's Work Rules and Integrity in the Workplace policies during her employment. (Doc. # 30-3 at 66:21-67:4).

Defendant hired Plaintiff as a Cashier at its Regions Bank cafeteria on or around September 2, 2004. (Doc. # 30-3 at 43:1-4, 44:13-19, 46:7-10). Plaintiff's job responsibilities included stocking drinks and food items and operating a cash register. (Doc. # 30-3 at 49:20-50:6).

In January 2011, Ben Leingang, who is Caucasian, became Plaintiff's immediate supervisor. He remained her supervisor until her termination. (Doc. # 30-1 ¶ 5, Ex. 1, p. 1; Pl. Dep. 48:11-16). Delores Musgrove, who is Caucasian, also worked as a Cashier for Eurest at Regions Bank from May 2010 to June 2012. (Doc. # 30-1 ¶6). Toward the end of Plaintiff's employment, Rita Nelson, who is Hispanic, was hired as a third Cashier at the Regions Bank cafeteria. (Doc. # 30-3 at 52:5-20, 142:20-143:7, 143:22-23; Doc. # 30-1 ¶ 7).

Compass Group provided Plaintiff with Cash Handling Procedures, which state that "the company operates a zero tolerance policy regarding cash handling and that failure to comply with these procedures will result in disciplinary action up to and including termination." (Doc. # 30-5; Doc. # 30-3 at 57:3-22, 58:14-17). Section 6 of Defendant's Cash Handling Procedures states that "[a]ll sales must be entered into the register immediately." (Doc. # 30- 5). Section 14 of the Cash Handling Procedures states that:

> any one (1) incident of a cash discrepancy (overage or shortage) of more than $3.00 will result in a formal written counseling session with the unit manager. Significant or repeated cash discrepancies (overage or shortage) will be subject to corrective action, which may range from a written warning to termination.

Doc. # 30- 5).

On an unknown date, Leingang allegedly allowed Musgrove to be "short" in her drawer by an unknown amount without discipline. (Doc. # 30-3 at 132:2-5, 137:22-138:2, 166:8-16, 168:8-15). Plaintiff heard that a former employee named Laquisha called Compass Group's employee hotline to complain that Musgrove was "doing something with some money." (Doc. # 30-3 at 132:5-9, 133:4-8, 133:18-134:1, 135:15-136:7). Former employee "Jasmine" and Food Services Utility employees Robert Wimley and Antonio Spencer also told Plaintiff that they believed Musgrove was short in her drawer. (Doc. # 30-3 at 138:3-139:2; Doc. # 30-1 at ¶ 8). Musgrove told Plaintiff that Leingang had informed her (Musgrove) that her drawer was short, but that Leingang found the missing money. (Doc. # 30-3 at 134:4-10, 134:16-18, Ex. 3). On another occasion, Musgrove told Plaintiff that her drawer was $30 short, but Plaintiff does not know how Defendant responded to the incident. (Doc. # 30-3 at 140:4-11). Plaintiff also alleges that Rita Nelson was short in her drawer, but she does not know whether Defendant disciplined Nelson. (Doc. # 30-3 at 144:22-143:21).

Leingang never disciplined Plaintiff for being short in her drawer, and Plaintiff was never short in her drawer when she reported to Leingang. (Doc. # 30-3 at 142:1-3, 142:15-19). Leingang did not issue any written disciplinary notices to Plaintiff during her employment. (Doc. # 30-3 at 169:19-170:4, 186:7-12).

Approximately three months before her termination, Plaintiff informed Human Resources that she had heard from co-workers that Musgrove had been short in her register, and asserted that

she (Plaintiff) would have been terminated if she had been short in her drawer. (Doc. # 30-3 at 166:8-16, 168:8-21). Plaintiff recalls bringing up race as an issue during her call with Human Resources because Musgrove was Caucasian and Plaintiff believed Leingang treated Musgrove differently than her. (Doc. # 30-3 at 170:17-172:2).

During spring break in 2011, Leingang allowed Musgrove to bring her teenage children to work for five days because she could not leave them home by themselves. (Doc. # 30-3 at 144:9-22, 145:6-10, 145:15-19). Plaintiff asked Leingang if all employees could bring their children to work, and Leingang noted that all of Plaintiff's children were grown. (Pl. Dep. 145:19-22, Ex. 3). Plaintiff told Leingang that although she had grandkids, she would not bring them to work, and she never asked him if she could bring her children or grandchildren to work. (Doc. # 30-3 at 145:23-146:2, 146:5-15).

Plaintiff told Human Resources that Leingang allowed Musgrove to bring her children to work, and referenced race because Musgrove and her children were Caucasian. (Doc. # 30-3 at 172:21-173:6, 173:19-174:1). Although it was never an issue, Plaintiff believed that *if* her children were teenagers, she would not have received the same privilege as Musgrove. (Doc. # 30-3 at 174:1-6).

On or about July 14, 2011, Musgrove informed Leingang that she was vomiting and could not work on July 15, 2011 because she needed medical attention. (Doc. # 30-1 ¶ 9). Plaintiff does not have personal knowledge why Musgrove asked to stay home or whether she was sick. (Doc. # 30-3 at 148:4-11).

On July 15, 2011, Plaintiff left a message for Leingang stating that her leg hurt and that she was going to take medication that would make her sleep. (Doc. # 30-3 at 149:9-16, 150:1-5; Doc.

4

# 30-1 ¶12).  Leingang contacted Plaintiff and informed her that she needed to come in because Musgrove had already called in sick.  (Doc. # 30-3 at 150:8-13).  Allowing Plaintiff to miss work would have left the Regions Bank location down two Cashiers with only one reporting to work on July 15th (three Cashiers are needed at peak hours).  (Doc. # 30-1 ¶ 9).  Leingang did not ask Musgrove to work as Leingang already knew she was too ill.  (Doc. # 30-1¶ 10).  Also, given the nature of Eurest's business, it attempts to prevent food and people from being exposed to certain airborne illnesses, such as stomach flu.  (Doc. # 30-1 ¶ 11).

Plaintiff contacted Natalie Sales in Compass Group's Human Resources Department, who told Plaintiff that she was not required to report to work if she was not feeling well.  (Doc. # 30-3 at 155:5-9; Doc. # 30-1 ¶ 12).  After the call, Plaintiff decided to report to work and Leingang allowed her to sit on a stool during her shift.  (Doc. # 30-1 ¶ 12; Doc. # 30-3 at 153:5-11).  Plaintiff told Sales during this July 15th call that she was required to come in to work because of "favoritism," and does not recall if she mentioned race.  (Doc. # 30-3 at 176:19-177:6; Doc. # 30-1 ¶ 12).

After work that day, Plaintiff told Leingang that although Human Resources had informed her that she did not have to report to work, she came in because she needed her job.  (Pl. Dep. 178:14-179:1, 179:12-14, Ex. 3).  Plaintiff also told Leingang that she did not know why he disliked her, and Leingang said he did not dislike her.  (Doc. # 30-3 at 179:14-22).  Plaintiff informed Leingang that she believed he had discriminated against her because of her race and called him a racist or "something on that form."  (Doc. # 30-3 at 181:10-182:5).

At some point in time. Musgrove's leg was placed in a cast due to a non-work-related injury.  (Doc. # 30-3 at 157:1-4, 157:21-22).  While her leg was in a cast, Musgrove was able to ring up customers, but she was unable to stock items.  (Doc. # 30-3 at 160:12-20).  Plaintiff was upset that

5

other employees had to perform Musgrove's work. (Doc. # 30-3 at 157:4-6, 157:8-10, 157:12-14). Plaintiff does not know if Musgrove's treating physicians had placed her on any work restrictions. (Doc. # 30-3 at 160:21-161:1). Plaintiff believes Compass Group treated her unfairly in this regard because she had to perform all of her job duties when she returned to work after a work-related injury in or around April 2009, but she had received a medical release from her physician. (Doc. # 30-3 at 159:4-7; Doc. # 30-1 ¶ 22).

Based on advice from Plaintiff's therapist, Compass Group allowed Plaintiff to sit on a stool when her leg hurt. (Doc. # 30-3 at 156:15-23). Leingang gave Plaintiff's stool to Musgrove when Musgrove's leg was placed in a cast, which Plaintiff felt was unfair. (Doc. # 30-3 157:17-20, 158:4-10). However, Plaintiff did not ask for another stool. (Doc. # 30-3 157:23-158:3). When Plaintiff complained to Leingang about her stool, he gave Plaintiff her stool back. (Doc. # 30-3 158:11-17, 158:21-23, 159:18-160:2).

Shortly after Leingang became Plaintiff's supervisor, he warned Plaintiff on several occasions that Carol McElheney, his supervisor, had informed him that Plaintiff's hair and makeup were not appropriate for the workplace. McElheney herself counseled Plaintiff about her makeup on one occasion. (Doc. # 30-3 213:20-214:5, 214:18-216:19, 219:23-220:6). Plaintiff asserts that Musgrove looked unprofessional due to her wrinkled uniform, but Plaintiff does not know if Musgrove, or any other employee, was counseled about their appearance. (Doc. # 30-3 212:21-213:3, 217:16-19, 220:13-21).

In early summer 2011, the Regions Bank location conducted a routine audit of sales and performed a "cashier pull," which examined the amount of sales of each Cashier. (Doc. # 30-1 ¶ 13). During this audit, it became evident that Plaintiff had a significant number of cash handling errors

6

including a high number of "voids," which is an indicator of theft. (Doc. # 30-1 ¶14). Defendant's Regions Bank location is monitored by a security company called SEI. (Doc. # 30-1 ¶15). After this cashier pull, on July 15, 2011, SEI moved cameras to monitor Plaintiff's cashiering procedures. (Doc. # 30-1 ¶16; Doc. # 30-2). On July 15, 18, 19 and 20, 2011, SEI employee, Captain Ken Lovell, monitored Plaintiff's cash handling and witnessed her pocketing change and bills from her register.[2] (Doc. # 30-2). Leingang also personally observed Plaintiff taking money from the register on July 19th and 20th via the security cameras. (Doc. # 30-1 ¶17; Doc. # 30-2).

On or about July 21, 2011, Leingang told Plaintiff that she was suspended pending an investigation. (Doc. # 30-1 ¶ ¶15, 18; Doc. # 30-3 107:3-5, 108:3-6). Defendant terminated her employment on July 26, 2011. (Doc. # 30-1 ¶ 19). Plaintiff's repeated thefts violated Compass Group's Work Rules, Integrity in the Workplace policy, and Cash Handling Procedures. (Doc. # 30-1 ¶ 19). Leingang, McElheney, and Compass Group's Human Resources Department were involved in the termination decision. (Doc. # 30-1 ¶ 19).

Although Leingang informed Plaintiff that she was terminated, he refused to explain why. (Doc. # 30-4 ¶16). Leingang asked Plaintiff to come into the office to discuss her termination, which Plaintiff refused to do. (Doc. # 30-3 113:6-17, 116:3-8). Plaintiff denies stealing money from the cash register and contends that if she put money in her pocket, it was her own money and not the Company's money. (Doc. # 30-3 121:9-11; Doc. # 30-4 ¶ 18).

On July 28, 2011, Plaintiff filed her Charge of Discrimination with the EEOC. (Doc. # 30-4; Doc. # 30-3 20:8-13). After Plaintiff's termination, on or about August 12, 2011, Mary Boggan who

---

[2] The Incident Report is dated incorrectly. (Doc. # 30-1 ¶ 16). Although the Incident Report states that the video recordings took place in August as denoted by the number "8," a reading of the Incident Report shows that the camera was set up on July 14th and that these events occurred in July. (*Id.*).

is African-American, transferred from another of Eurest's locations to the Regions Bank location. She and Nelson assumed Plaintiff's job duties. (Doc. # 30-1 ¶ 7). No other Cashiers at the Regions Bank location who reported to Leingang were ever suspected of engaging in theft. (Doc. # 30-1 ¶ 20).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

**III.     Analysis**

For the reasons stated below, the court concludes that there are no material issues of fact in this case and Defendant is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56.

**1.     Plaintiff's Complaint**

Plaintiff's Complaint, which was filed with the assistance of counsel, asserts the following claims: (1) Race Discrimination - Title VII, and (2) Race Discrimination - Retaliation.  (Doc. # 30-4).  Plaintiff's primary claim under both counts appears to be related to the termination of her employment, although Count One could be read to include a disparate treatment claim in the terms and conditions of Plaintiff's employment as it relates to her co-worker Musgrove.

**2.     Plaintiff Has Failed to Establish Her Race Discrimination Claim**

Where, as here, a plaintiff relies upon circumstantial evidence of discrimination or retaliation, courts apply the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008).  Under this analysis, once a plaintiff has established a prima facie case of discrimination or retaliation, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason'" for the challenged action.  *Crawford*, 529 F.3d at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the employer does so, "the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Id.* (citations omitted).

The Eleventh Circuit has held, with respect to a disparate treatment claim, that "an 'adverse employment action' includes 'termination, failure to hire, or demotion.'"  *Blue v. Dunn Const. Co., Inc.*, 453 Fed.Appx. 881, 884 (11th Cir. 2011) (quoting *Crawford*, 529 F.3d at 970).  "An employer's conduct falling short of those actions 'must, in some substantial way, alter the employee's

9

compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee.'" *Blue*, 453 Fed.Appx. at 884 (citing *Crawford*, 529 F.3d at 970). "With regard to the level of substantiality required, the plaintiff must demonstrate that he 'suffered a *serious and material* change in the terms, conditions, or privileges of employment.'" Not every act of an employer that an employee does not like rises to the level of actionable disparate treatment. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001). Among the factors affecting whether a decision is considered "adverse" are whether the decision results in "lesser pay, responsibilities or prestige," and whether the decision would "impede an employee's professional growth or advancement." *Doe v. DeKalb County School District*, 145 F.3d 1441, 1452 (11th Cir. 1998).

### A.    "Other" Employment Decisions

In addition to her termination, Plaintiff complained about Defendant's treatment of her with regard to a number of issues: (1) Leingang allowed Musgrove to bring her children to work, but would not have allowed Plaintiff's children to come to work; (2) Leingang's requirement that Plaintiff come into work when Musgrove was sick; (3) Compass Group's requirement that Plaintiff perform all of her job duties when she returned to work after leave; (4) Leingang gave Plaintiff's stool to Musgrove; and (5) Leingang's warning about Plaintiff's professional appearance. (Doc. # 30-3131:15-132:1, 144:1-8, 147:10-20, 157:17-20, 159:4-7, 171:4-172:18, 212:21-213:3, 214:18-215:6; Doc. # 30-4 ¶¶ 11, 13, 14).

Under a disparate treatment analysis, none of these issues rises to the level of an actionable adverse employment action. *See, e.g., White v. Hall*, 389 Fed. Apex. 956 (11th Cir. 2010) (more difficult assignments not adverse); *Belt v. Alabama Historical Comm'n*, 181 Fed. Apex. 763 (11th

Cir. 2006) (minor changes in job duties including suspending authority to order inventory and requiring reports to go through supervisor were not adverse employment actions). For this reason, to the extent Count One could be read to assert a disparate treatment claim over these issues, Defendant is entitled to summary judgment on that claim.

### B. Plaintiff's Termination

To prevail of her claim, Plaintiff must present evidence that is "sufficient to create an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). A plaintiff can establish that inference by showing: "(1) [s]he was a member of a protected class; (2) [s]he was qualified for the job; (3) [s]he suffered an adverse employment action; and (4) [her] employer treated similarly situated employees outside the protected class more favorably." *Crawford*, 529 F.3d at 970. Of course, the prima facie case elements are flexible. For example, alternatively, as to the fourth proof requirement, a plaintiff may show that she was "replaced by someone outside the protected class." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004). Plaintiff cannot establish the fourth element of her prima facie case under either proof model.

Plaintiff failed to establish that she was replaced by someone outside her protected class. Rather, her duties were assumed by two existing employees: Plaintiff's co-worker, Nelson, and Mary Boggan, who is African American and had been working at another of Defendant's locations.

Nor has Plaintiff presented evidence that she was treated less favorably than a similarly situated employee outside her protected class. A plaintiff must identify similarly situated employees, outside the protected class, who engaged in nearly identical misconduct, but received better or more favorable disciplinary treatment. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). No other Cashiers at Eurest's Regions Bank location who reported to Leingang were ever suspected of

committing theft. Although Plaintiff claims that she heard hearsay from several employees that Musgrove's drawer was short, there is no evidence in the record that Musgrove's drawer was short, much less short due to theft for that matter. Because Plaintiff cannot establish that Musgrove engaged in similar misconduct and was not terminated, Plaintiff has failed to establish prima facie case of race discrimination.

In any event, Defendant has articulated a legitimate, non-discriminatory and non-retaliatory reason for its decision to terminate Plaintiff's employment. Both an SEI employee and Leingang witnessed Plaintiff stealing money from her cash register. This is a violation of Defendant's Work Rules, Integrity in the Workplace policy, and Cash Handling Procedures.

If the employer articulates a legitimate, nondiscriminatory reason for an adverse employment action, then the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 at 256. A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (quotation omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030; *see Rojas v. Florida*, 285

F.3d 1339, 1342 (11th Cir. 2004) (holding that the factual issue is not whether a plaintiff is a good employee or the accuracy of the employer's conclusion that the plaintiff was an unsatisfactory employee, but whether the conclusion is an honest one).

Plaintiff has failed to demonstrate that Defendant's legitimate, non-discriminatory reason for her termination is a pretext for unlawful discrimination or retaliation. Plaintiff's primary pretext argument is that she did not steal money and, thus, should not have been terminated. However, this contention is insufficient to establish pretext. To establish pretext, a plaintiff must show that the employer did not honestly believe the facts upon which it relied. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). "[I]t is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated." *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1341 (11th Cir. 2000).

Plaintiff has not offered any evidence to call into question Defendant's good faith belief that Plaintiff stole money from her register. Both Leingang and an SEI employee witnessed Plaintiff pocketing money. Therefore, Plaintiff has failed to establish that Defendant's legitimate, non-discriminatory reason for her termination is a pretext for discrimination.

### 3. Plaintiff Has Failed to Establish Her Retaliation Claim

"As a prerequisite to bringing suit under Title VII, a charge must be filed with the EEOC within 180 days of the date of the act giving rise to the charge." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993). Plaintiff filed an EEOC Charge regarding her termination on July 28, 2011. Although she asserted that her termination was the result of race discrimination, Plaintiff did not assert in that charge that her termination was the product of retaliation. Because

Plaintiff's Charge does not contain any retaliation allegations, Plaintiff failed to exhaust her administrative remedies as to her retaliation claim.

Even if Plaintiff had satisfied the administrative prerequisites to her retaliation claim, she has failed to establish a prima facie case of retaliation. To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the two events. *See Crawford*, 529 F.3d at 970; *see also Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Giving Plaintiff the benefit of all favorable inferences and assuming for the purposes of the current Motion that Plaintiff engaged in protected conduct, Plaintiff's proof nonetheless fails on the third element.

The Supreme Court has recently held that a plaintiff must demonstrate "but for" causation when making a Title VII retaliation claim. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). Thus, causation now "require[s] proof that the desire to retaliate was the but-for cause of the challenged employment action." *Id.*

The only possible proof of causation in the record is the fact that Plaintiff's termination occurred shortly after alleged July 2011 complaints. However, between the alleged complaints and her termination, Plaintiff was observed pocketing money from her register. Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). However, "[i]ntervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action." *Henderson v. FedEx Express*, 442 Fed.Appx. 502, 506 (11th Cir. 2011) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)

(explaining that the plaintiff's intervening misconduct "eroded any causal connection that was suggested by the temporal proximity of his protected conduct and his termination")). SEI's and Leingang's observation of Plaintiff pocketing money from her register are intervening events that sever any causal connection that may otherwise be inferred. Therefore, Plaintiff has failed to establish the causation element of her prima facie case of retaliation.

In any event, for the reasons discussed above, Defendant articulated a legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's termination, and she has failed to establish that reasons is a pretext for either discrimination or retaliation.

### IV.  Conclusion

For all of the foregoing reasons, Defendant is entitled to summary judgment on all of the claims in Plaintiff's complaint and Defendant's Motion for Summary Judgment is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this ____6th____ day of January, 2014.

                                              _____
                                              **R. DAVID PROCTOR**
                                              UNITED STATES DISTRICT JUDGE